UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
CAROLYNN SCULL,

                Plaintiff,

        v.

LA PERLA NORTH AMERICA, INC. d/b/a LA PERLA and LA PERLA BEAUTY US, INC. d/b/a LA PERLA.

                Defendant.
----------------------------------------------------------X

Index No.

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Carolynn Scull ("Plaintiff") alleges, against Defendant La Perla North America, Inc. and La Perla Beauty U.S., Inc. (together, "Defendant" or "La Perla") as follows:

## NATURE OF THE CLAIMS

1. Plaintiff Carolynn Scull asserts claims of pregnancy discrimination and retaliation against La Perla in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"), the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. ("NYCHRL"). Ms. Scull seeks all available relief, including punitive damages.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because La Perla is located in New York and because a substantial part of

the events or omissions giving rise to this action occurred there. Plaintiff and Defendant also contractually agreed to New York County venue for any legal proceedings.

## ADMINISTRATIVE PREREQUISITES

4. Plaintiff will file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and will file an Amended Complaint alleging violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* following the EEOC's issuance of a Notice of Right to Sue or other conclusion of the administrative proceedings.

5. Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

6. Thus, any and all other prerequisites to the filing of this suit have been met.

## PARTIES

7. Plaintiff Carolynn Scull is a former employee of La Perla. Ms. Scull is a resident of the State of New York. At all relevant times, Ms. Scull was an "employee" under all relevant statutes.

8. Defendant La Perla North America, Inc. is a corporation doing business in the State of New York with a stated business address of 32 East 57th Street, 6th Floor, New York, NY 10022.

9. Defendant La Perla Beauty U.S., Inc. is a corporation doing business in the State of New York with a stated business address of 32 East 57th Street, 6th Floor, New York, NY 10022.

**FACTUAL ALLEGATIONS**

**I.     Ms. Scull's Initial Pregnancy Announcement Met With Negativity**

10.     In or about August 2021, Ms. Scull began working for LaPerla as an Account Management and Marketing Manager.  Her role changed in December 2022, and she became an E-Commerce Manager.

11.     In this role, Ms. Scull worked under the supervision of General Manager-North America, Jure Klepic.  Ms. Scull was a dedicated employee, with no disciplinary actions against her throughout her employment and she had no negative performance reviews.

12.     On or about January 27, 2023, Ms. Scull informed Mr. Klepic of her pregnancy and he reacted with annoyance.  He commented inappropriately, "You waste no time!"—a blatant slight to Ms. Scull because she had just started a new role.

13.     Mr. Klepic then noted that LaPerla was revising the current maternity leave policy because, according to him, "[LaPerla] didn't know what they were doing with the first one."

14.     Ms. Scull left the meeting feeling offended by Mr. Klepic's reaction and uncomfortable about LaPerla's maternity accommodation practices.

15.     Once the meeting was over, Ms. Scull contacted her direct supervisor, Maria Pisano, and described the meeting with Mr. Klepic as "brutal."  Ms. Pisano commented that Klepic's reaction was inexcusable.

16.     Sadly, the next day, on or about January 28, 2023, while 17 weeks pregnant, Ms. Scull lost her baby.  Ms. Scull was devastated and took a one-month bereavement leave.

**II.    Ms. Scull's June 2023 Pregnancy and Request For Accommodation**

17.     On or about June 5, 2023, Ms. Scull contacted Mr. Klepic and told him that she was pregnant again.

18. Ms. Scull was elated but also concerned about ensuring that she could carry the baby to term and have a healthy delivery.

19. Notably, just two weeks before Ms. Scull's disclosure, on or about May 23, 2023, LaPerla announced a new office policy for the North America team to return to work in-person at the New York City office at least twice a week.

20. Previously, Ms. Scull had worked entirely remotely.

21. While Ms. Scull has no aversion to working in-person at the office, she shared with Mr. Klepic that she had been diagnosed as having a high-risk pregnancy and was concerned about commuting back-and-forth to New York City.

22. Ms. Scull asked for a deviation from this policy as an accommodation.

23. Ms. Scull was hired in a fully remote position and had succeeded working in that capacity and requiring her to come into the office two days per week was a major change to the terms and conditions of her employment.

24. Mr. Klepic advised Ms. Scull that he would discuss Ms. Scull's concerns with the global office.  However, Mr. Klepic never responded to Ms. Scull's request for this accommodation.

### III.  LaPerla Stops Paying Its North American Employees; Ms. Scull's Duties Increase

25. In or around the end of June 2023, LaPerla stopped paying its North American employees on a regular bi-weekly payment schedule.

26. At first, there were two delays of an additional week in meeting payroll.  A third delay lasted five weeks with no pay.

27. Ms. Scull worked under these conditions, which then included no pay at all for the month of August until being finally provided compensation on or about September 8, 2023.

4

28. Her next paychecks were not received until on or about October 16 and 17, 2023. In sum, LaPerla had paid its employees twice in a 12-week period, in blatant violation of the New York Labor Law.

29. Due to these business issues, LaPerla's focus on revenue shifted from business-to-business sales to sales through third-party retailers.

30. This shift fell well within Ms. Scull's scope of work.

31. On or about August 31, 2023, the Director of Marketing submitted her resignation.

32. Further, the previous Director of Account Management had been let go in June 2023.

33. With attrition at its peak, Ms. Scull's daily responsibilities significantly increased.

**IV.   Ms. Scull Advocates For Promotion; Mr. Klepic Refuses Her Efforts**

34. In or around the first week of September 2023, Ms. Scull had a call with Mr. Klepic wherein she advocated for a promotion to a Director-level position to oversee Marketing & Account Management.

35. In doing so, Ms. Scull noted she was LaPerla's longest-tenured North American employee. She went on to highlight how she worked closely with both the Marketing and Account Management channels and was best suited for assuming more responsibilities and taking on the aspects of the business which lacked leadership.

36. Mr. Klepic told Ms. Scull they could revisit the topic once she returned from her maternity leave, indicating that he wanted her to "prove" to him that she would be returning after having a baby.

37. Ms. Scull then asked who would be overseeing these channels of business for the

remainder of the year while she was on leave, as she was aware that Mr. Klepic was already extremely busy with his current responsibilities.

38. Ms. Scull tried to convince Mr. Klepic that there was no need to wait for her to return from maternity leave to be promoted because she had already taken on additional duties given the recent staff losses, she had proven her commitment by working through a period without compensation and she could take on more responsibilities until she had the baby, and then simply continue on with the new role and responsibilities upon her return.

39. Mr. Klepic said he was not sure who would take on the new responsibilities and resonated with Ms. Scull's points. Mr. Klepic said he would discuss the proposed plan with Chief Commercial Officer ("CCO") Lisa Jackson and would let Ms. Scull know.

40. A few days later, in or about early September 2023, Ms. Scull had a second call with Mr. Klepic regarding the promotion and assuming further responsibilities.

41. During the call Mr. Klepic informed Ms. Scull that he spoke with Ms. Jackson, but the request was declined.

42. Mr. Klepic explained he would be presenting her as the candidate for the Director-level position upon her return from maternity leave.

43. Mr. Klepic further noted he believed Ms. Scull would be a "great fit," that Ms. Scull deserved the position, and expressed his goal of promoting from within.

44. On or about September 5, 2023, Account Executive West Sydney Tons returned from her maternity leave. Two days later, on or about September 7, 2023, Ms. Tons was abruptly terminated without cause or justification.

45. On or about October 24, 2023, Ms. Scull called Mr. Klepic to discuss sales with Amazon. After discussing the topic, Mr. Klepic told Ms. Scull that he spoke to Ms. Jackson and

6

noted, "I didn't realize this was your third child?"

46. Mr. Klepic went on to say, "I knew you had a son because you were on maternity leave with him when I joined the company, so I figured this was your second baby and maternity leave, but Lisa told me you have a daughter as well."

47. Ms. Scull thought it was strange that the General Manager and the CCO were discussing Ms. Scull's family in such detail, but Ms. Scull responded in a cordial manner.

**V.   LaPerla Abruptly Terminates Ms. Scull And Two Other Female Employees**

48. Merely three days after Mr. Klepic reported discussing Ms. Scull's number of children with the CCO, on or about October 27, 2023, LaPerla abruptly terminated Ms. Scull without cause or justification.

49. This was six weeks before Ms. Scull was scheduled to begin her maternity leave and just one month after Mr. Klepic told her he would put her up for promotion.

50. Upon information and belief, at the same time, LaPerla also terminated two other female employees, both of whom are parents.

51. LaPerla clearly used a purported reduction in force to rid itself of Ms. Scull due to her parental caretaking responsibilities and her upcoming maternity leave, as well as other female employees with similar responsibilities.

**FIRST CAUSE OF ACTION**
**(Retaliation in Violation of the FMLA)**

52. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

53. At all times relevant herein, Defendant was a "covered employer" and Plaintiff was a "covered employee" within the meaning of the FMLA.

54. By the actions described above, Defendant retaliated against Plaintiff for utilizing rights available under the FMLA and/or informing Defendant that she intended to avail herself of rights under the FMLA, by, *inter alia*, terminating Plaintiff's employment.

55. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm, emotional distress, mental anguish and reputational harm for which she is entitled to an award of monetary damages, liquidated damages, reasonable attorneys' fees and expenses and other relief.

## **SECOND CAUSE OF ACTION**
**(Interference in Violation of the FMLA)**

56. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

57. At all times relevant herein, Defendant was a "covered employer" and Plaintiff was a "covered employee" within the meaning of the FMLA.

58. By the actions described above, among others, Defendant unlawfully interfered with Plaintiff's right to take FMLA leave and return to work in the same or substantially the same position, by, *inter alia*, terminating Plaintiff's employment.

59. As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm, emotional distress, mental anguish and reputational harm for which she is entitled to an award of monetary damages, liquidated damages, reasonable attorneys' fees and expenses and other relief.

## THIRD CAUSE OF ACTION
**(Discrimination in Violation of the NYSHRL)**

60.     Plaintiff repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

61.     By the actions described above, among others, Defendant discriminated against Plaintiff on the basis of her gender and/or gender-related conditions, including pregnancy, in violation of the NYSHRL.

62.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm, mental anguish, emotional distress and reputational harm for which he seeks all available relief.

63.     Defendant's unlawful actions constitute intentional, malicious, willful and wanton violations of the NYSHRL entitling Plaintiff to an award of punitive damages.

64.     Plaintiff also seeks recovery of all attorneys' fees and expenses.

## FOURTH CAUSE OF ACTION
**(Discrimination in Violation of the NYCHRL)**

65.     Plaintiff repeats, reiterates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

66.     By the actions described above, among others, Defendant discriminated against Plaintiff on the basis of her gender and/or gender-related conditions, including pregnancy, in violation of the NYSHRL.

67.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm, mental anguish, emotional distress and reputational harm for which he seeks all available relief.

68. Defendant's unlawful actions constitute intentional, malicious, willful and wanton violations of the NYSHRL entitling Plaintiff to an award of punitive damages.

69. Plaintiff also seeks recovery of all attorneys' fees and expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant, through the following relief:

A. A declaratory judgment that the actions of Defendant complained of herein violate the laws of the United States and the State of New York;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to past and future lost earnings;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, emotional pain and suffering and emotional distress;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

F. An award of punitive damages in an amount to be determined at trial;

G. An award of liquidated damages in an amount to be determined at trial;

H. An award of attorneys' fees and costs that Plaintiff has incurred in this action to the fullest extent permitted by law; and

      I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: May 23, 2024
       New York, New York                     Respectfully submitted,

                                               **WIGDOR LLP**

                                               By: _____
                                                     David E. Gottlieb

                                             85 Fifth Avenue
                                             New York, NY 10003
                                             Telephone: (212) 257-6800
                                             Facsimile:  (212) 257-6845
                                             dgottlieb@wigdorlaw.com

                                             *Counsel for Plaintiff*